UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUSTIN MCFADDEN,<br><br>        Plaintiff,<br><br>v.<br><br>DAVIS-ULMER SPRINKLER COMPANY, INC. d/b/a ELLIS FIRE SUPPRESSION INC., KRISTEN BETTMANN, AND SUZANNE PAULDING,<br><br>        Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No. 25-cv-11103-ADB<br>*<br>*<br>*<br>*<br>*<br>* |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION TO REMAND

BURROUGHS, D.J.

    Justin McFadden ("McFadden" or "Plaintiff") brought this action in Massachusetts Superior Court against his previous employer, Davis-Ulmer Sprinkler Company, Inc. d/b/a Ellis Fire Suppression,[1] ("Davis-Ulmer"), its Treasurer, Kristin Bettmann ("Bettmann"), and a manager, Suzanne Paulding ("Paulding," and, collectively with Davis-Ulmer and Bettmann, "Defendants"). [ECF No. 1-1]. In sum, he alleges that he was wrongfully denied his performance bonus and misclassified, which deprived him of overtime pay. [ECF No. 5 ("Amended Complaint" or "Am. Compl.")]. Defendants removed the case to federal court on April 24, 2025. [ECF No. 1].

    As relevant here, McFadden's Amended Complaint asserts two claims against Paulding for violations of the Massachusetts wage and hour laws. See [Am. Compl. ¶¶ 37–41 (Count I,

---

[1] McFadden named "Davis-Ulmer Sprinkler Company, Inc. d/b/a Ellis Fire Suppression Inc." as a defendant to this action, which Defendants assert is incorrect, as the proper name is "Davis-Ulmer Sprinkler Company, Inc. d/b/a Ellis Fire Suppression." [ECF No. 13 at 1 n.1].

alleging violations of Mass. Gen. Laws ch. 149, §§ 148, 150); 52–57 (Count IV, alleging violations of Mass. Gen. Laws ch. 151, § 1A)]. Currently before the Court is Plaintiff's motion to remand, [ECF No. 4], which Defendants oppose, [ECF No. 13], and Defendants' motion to dismiss the claims against Paulding, [ECF No. 14]. For the reasons set forth below, Plaintiff's motion for remand is **DENIED** because Paulding was fraudulently joined to the action, and Defendants' motion to dismiss the claims against her is **GRANTED**.

## I.    BACKGROUND

### A.    Factual Background[2]

Ellis Fire Suppression was established in 2005 and acquired by Davis-Ulmer in 2016. [Am. Compl. ¶ 5]. It is a New York-based company specializing in fire protection for residential and commercial buildings, which, according to its website, includes fire sprinkler systems, fire alarm systems, chemical systems, life safety systems, and fire extinguishers. [Id. ¶¶ 2, 6]; [ECF No. 1 ¶ 14].

Davis-Ulmer hired McFadden, a Massachusetts resident, as a full-time, at-will "Account Executive" on or about June 21, 2020. [Am. Compl. ¶¶ 1, 7–8]. From his June 2020 start date through approximately December 2023, McFadden worked an average of 55 to 60 hours per week, which decreased to approximately 45 hours per week throughout 2024. [Id. ¶ 10]. Davis-Ulmer did not keep track of McFadden's hours because he was classified as exempt from overtime and paid a salary. [Id. ¶ 11]. Throughout McFadden's employment, he never participated in a formal performance evaluation, was never given a formal written reprimand or

---

[2] For purposes of this motion, the relevant facts are drawn from the Amended Complaint, [Am. Compl.], and viewed in the light most favorable to Plaintiff. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (citations omitted).

warning, and was never issued a corrective action or performance improvement plan. [Id. ¶¶ 23–24].

McFadden was paid a base salary and was eligible for a lump sum incentive payment pursuant to a "Standard Sales Incentive Plan" (the "Plan") based upon performance during the calendar year. [Am. Compl. ¶¶ 8, 14]. Davis-Ulmer historically paid McFadden his annual incentive payment for the preceding calendar year on or around March 7. [Id. ¶ 15]. His largest annual incentive payment occurred in 2023, when he was paid approximately $48,000. [Id. ¶ 17]. In January 2025, McFadden was informed that his annual incentive payment for 2024 was $28,963. [Id. ¶ 25].

On February 19, 2025, three company managers, including Paulding, terminated McFadden. [Am. Compl. ¶ 26]. When McFadden pressed for a reason for the termination, Defendants initially claimed that it was based on his performance. [Id. ¶ 27]. McFadden responded that he had earned a significant annual incentive payment for the calendar year based on his sales and reminded Defendants that he had never been issued any type of warning, after which Defendants changed their proffered reason for his termination, claiming that it was due to an internal reorganization. [Id.].

Throughout McFadden's employment, Paulding, a Massachusetts resident, was a manager at the company with at least one direct report. [Am. Compl. ¶¶ 4, 29]. She assigned McFadden assignments and tasks, which he "did not have the opportunity to reject or refuse," [id. ¶ 31], was "actively involved in hiring, reprimanding[,] and terminating employees," [id. ¶ 32], and "managed numerous aspects and facets of the Company's operations, including but not limited to Payroll," [id. ¶ 29].

### B.  Procedural Background

On March 3, 2025, McFadden filed the instant action in Massachusetts Superior Court. [ECF No. 1-1]. On April 24, 2025, Defendants removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1441(a), arguing that Plaintiff had fraudulently joined Kenneth Houston, the only defendant who was a Massachusetts citizen and whose presence in the lawsuit thus would defeat complete diversity, as required by 28 U.S.C. § 1332. [ECF No. 1]. Plaintiff moved to remand on April 28, 2025, [ECF No. 4], and simultaneously filed an Amended Complaint, [ECF No. 5], replacing Houston with Paulding as a defendant. Defendants opposed the motion to remand on May 16, 2025, contending that Paulding, like Houston, was fraudulently joined for the purpose of defeating diversity. [ECF No. 13]. The same day, Defendants filed a motion to dismiss the two claims against Paulding, [ECF No. 14], Plaintiff opposed on May 22, 2025, [ECF No. 17], and Defendants filed a reply in support of their motion on June 5, 2025, [ECF No. 20].

## II.  MOTION TO REMAND

### A.  Legal Standard

Although complete diversity is typically required for removal based on diversity jurisdiction, pursuant to the doctrine of fraudulent joinder, "a plaintiff may not impede a defendant's right of removal by fraudulently joining a non-diverse defendant who has no real connection to the case." Surabian Realty Co., Inc. v. CUNA Mut. Grp., 245 F. Supp. 3d 297, 299 (D. Mass. 2017); [3] see also Universal Truck & Equip. Co., Inc. v. Southworth-Milton, Inc.,

---

[3] Fraudulent joinder is occasionally explained as "an exception to the forum-state defendant rule, 28 U.S.C. § 1441(b)(2)," which states that a civil action otherwise removable for diversity pursuant to § 1332(a) is not removable if "any of the parties in interest properly joined and served as defendants is a citizen" of the forum state. See, e.g., Bay Equity LLC v. Total Mortg. Servs., LLC, No. 20-cv-10693, 2020 WL 7353404, at *3 (D. Mass. Dec. 15, 2020). For clarity,

4

765 F.3d 103, 108 (1st Cir. 2014) ("[U]nder the doctrine of fraudulent joinder, removal is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant."). When considering a claim for fraudulent joinder, the Court must determine whether the party seeking removal to federal court has carried their "burden of demonstrating by clear and convincing evidence 'either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court.'" Surabian Realty, 245 F. Supp. 3d at 299  (quoting Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 5 (D. Mass. 2001)); see also Mills, 178 F. Supp. 2d at 4 (D. Mass. 2001) ("The linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact."). "[I]n determining whether a plaintiff has the possibility of recovery against a defendant, the court is to resolve all disputed issues of fact and ambiguities of law in favor of the non-removing party." In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig., 76 F. Supp. 3d 321, 333 (D. Mass. 2015).

---

this Court does not view Defendants' argument here as invoking § 1441(b)(2), which applies only to civil actions "otherwise removable solely on the basis of the jurisdiction under [§] 1332(a)." See, e.g., Denman by Denman v. Snapper Div., 131 F.3d 546, 548 (5th Cir. 1998) (distinguishing argument for remand based on lack of diversity from argument for remand based on forum defendant rule).  Rather, Defendants contend that Paulding was fraudulently joined to render the parties non-diverse and thus defeat original jurisdiction under § 1332(a) and removal jurisdiction under § 1441(a), as both Plaintiff and Paulding are residents of Massachusetts. See [ECF No. 14 at 2 ("Because Ms. Paulding is clearly not a proper defendant, her citizenship should be disregarded for purposes of diversity jurisdiction.  As such, because there is complete diversity between Plaintiff and the properly named Defendants, and because the amount in controversy exceeds $75,000, this action properly belongs in this District Court.")].  The Court bases its analysis herein on that understanding of Defendants' objection.

### B. Discussion

#### 1. Massachusetts Wage Act

In Count I, McFadden alleges that Defendants, including Paulding, violated the Massachusetts Wage Act (the "MWA") by failing to pay him $28,963 in incentive compensation pursuant to the Plan for 2024. [Am. Compl. ¶¶ 37–41]. Defendants contend that McFadden has not pled sufficient facts to establish individual liability against Paulding under the MWA because she does not have sufficient authority over the corporation. [ECF No. 13 at 5–7]. Specifically, they assert that "Plaintiff does not allege facts that could possibly be interpreted to mean that Ms. Paulding's alleged responsibilities are 'similar to those performed by a corporate president or treasurer' or that she 'controls, directs, and participates to a substantial degree in formulating and determining the *policy* of'" Davis-Ulmer, as required for individual liability under the MWA. [Id. at 6 (quoting Ndoye v. Rent-A-Ctr., Inc., No. 13-cv-40014, 2013 WL 12617551, at *5 (D. Mass. July 15, 2013))].

The MWA "provides a cause of action for employees whose wages have been wrongfully withheld." Drachman v. Bos. Sci. Corp., No. 16-cv-11022, 2017 WL 1591834, at *5 (D. Mass. Apr. 28, 2017). Under the MWA, a cause of action can be brought against a corporation, as well as "[t]he president and treasurer of a corporation and any officers or agents having the management of such corporation." Id. (quoting Mass. Gen. Laws ch. 149, § 148). The MWA's legislative history evidences an "intent to ensure that individuals with the authority to shape the employment and financial policies of an entity be liable for obligations of that entity to its employees." Id. (citing Cook v. Patient Edu, LLC, 989 N.E.2d 847, 852 (Mass. 2013)). "This expansive view of potential liability is circumscribed," however, by the requirement that the individual be able to exercise sufficient control over the employer. See id.

"[M]erely holding a managerial position over some branch, division, or office of a corporation does not, by itself, mean that that manager has the 'management' of the 'corporation' as a whole." Wiedmann v. Bradford Grp., Inc., 831 N.E.2d 304, 314 (Mass. 2005), superseded by statute on other grounds, Mass. Gen. Laws ch. 149, § 150, as recognized in Lipsitt v. Plaud, 994 N.E.2d 777, 783 (Mass. 2013). Rather, the Massachusetts Supreme Judicial Court has held that a manager is liable under the MWA only if she "controls, directs, and participates to a substantial degree in formulating and determining policy of a corporation," id., such that the manager exercises responsibilities "similar to those performed by a corporate president or treasurer, particularly in regard to the control of finances or payment of wages," Segal v. Genitrix, LLC, 87 N.E.3d 560, 568 (Mass. 2017). This analysis "is fact-intensive and context-specific." Drachman, 2017 WL 1591834, at *5.

In the instant case, McFadden has not stated a plausible claim against Paulding under the MWA because he has not sufficiently alleged that she is an "officer[] or agent[] having the management" of Davis-Ulmer, particularly with regard to payroll policy. Cook, 989 N.E.2d at 851 (citation omitted). His allegations certainly establish that Paulding holds a managerial position for Davis-Ulmer and that this role includes some day-to-day payroll responsibilities. See [Am. Compl. ¶¶ 29, 31–32 (describing Paulding as "a [m]anager with at least one direct report" who, consistent with that role, exercises certain managerial responsibilities, including hiring and firing employees, assigning work, and "manag[ing] . . . payroll")]. Missing from the Amended Complaint, however, is any allegation from which the Court could draw a plausible inference that Paulding exercised such control over Davis-Ulmer's payroll policies that her responsibilities were equivalent to those that would be performed by a corporate president or treasurer or involved payroll policy. See generally [Am. Compl.]; Segal, 87 N.E.3d at 568. For

7

instance, even construing the allegations generously and assuming that Paulding exercised control over paying McFadden his incentive compensation (and the Amended Complaint falls short of raising a plausible inference in this regard), this type of individualized decision-making would not evidence "the necessary involvement with and control of company policies that is necessary to extend MWA liability." Drachman, 2017 WL 1591834, at *6 (human resources employee did not exercise significant control over company for liability to attach under the MWA where her job responsibilities included "managing and controlling the financial policies of her department, recommending starting salaries for new employees, leading meetings to determine employees' eligibility for and amount of their annual bonus, and managing leaves of absence"). Because Plaintiff's allegations could not raise a plausible claim for relief under the MWA in state court against Paulding, the Court holds that Paulding was fraudulently joined as to Count I.

2. Mass. Gen. Laws ch. 151, § 1A

McFadden also brings a claim against Defendants, including Paulding, for violating Massachusetts law governing overtime payments, Mass. Gen. Laws ch. 151, § 1A. [Am. Compl. ¶¶ 52–57 (Count IV)]. As with the MWA, however, individual liability under this overtime provision attaches only to the "employer or [its] officer or agent," Mass. Gen. Laws ch. 151, § 1B, and the Massachusetts Supreme Judicial Court has clarified that, as with the MWA, the statute contemplates liability attaching only to an employee who "controls, directs, and participates to a substantial degree in formulating and determining policy of a corporation," Wiedmann, 831 N.E.2d at 314. Thus, for the reasons articulated in analyzing McFadden's claim under the MWA, the Court finds that Plaintiff has not stated a plausible claim for relief against Paulding under the overtime provision.

Because the Court determines that Pauling was fraudulently joined to the Amended Complaint and jurisdiction is proper under 28 U.S.C. § 1332, McFadden's motion for remand is **DENIED**.

### III. MOTION TO DISMISS

Defendants also move to dismiss the claims against Paulding pursuant to Federal Rule of Civil Procedure 12(b)(6).  See generally [ECF No. 14].  Although the Court recognizes that the standards for determining fraudulent joinder and for 12(b)(6) dismissal are not identical,[4] "a finding of fraudulent joinder bears an implicit finding that the plaintiff has failed to state a cause of action against the fraudulently joined defendant."  Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir. 1983).  Here, the Court is satisfied that McFadden has not stated a plausible claim for relief against Paulding for the reasons articulated herein.  As such, Defendants' motion to dismiss the claims against Paulding is **GRANTED**.

### IV. CONCLUSION

Accordingly, McFadden's motion to remand, [ECF No. 4], is **DENIED**, and Defendants' motion to dismiss the claims against Paulding, [ECF No. 14] is **GRANTED**.

**SO ORDERED.**

July 10, 2025                                          /s/ Allison D. Burroughs
                                                       ALLISON D. BURROUGHS
                                                       U.S. DISTRICT JUDGE

---

[4] Specifically, although "[t]he fraudulent joinder analysis involves a substantive standard similar to the one used for a motion to dismiss under Rule 12(b)(6)," the fraudulent joinder analysis "permits courts to look beyond the complaint and consider other relevant documents."  Smith v. Deutsche Bank Nat'l Tr. Co. for Soundview Home Loan Tr. 2005-OPT4, Asset-Backed Certificates, Series 2005 OPT4, No. 17-cv-12517, 2018 WL 4688309, at *1 (D. Mass. Sept. 28, 2018); see also Bay Equity, 2020 WL 7353404, at *3 (discussing similar standards under fraudulent joinder and 12(b)(6) analyses).  Because the Court did not need to reach any documents beyond the Amended Complaint in ruling on fraudulent joinder in this case, however, the analysis of the motion for remand and the motion to dismiss is essentially the same.